### 22708

Roger G. HUCKS, Respondent v. Richard W. RILEY, Governor of the State of South Carolina, as ex officio Chairman and member of the State Budget and Control Board, Grady L. Patterson, Jr., Treasurer of the State of South Carolina, Earle E. Morris, Jr., Comptroller General of the State of South Carolina, Rembert C. Dennis, Chairman of the Finance Committee of the South Carolina Senate, and Tom G. Mangum, Chairman of the Ways and Means Committee of the South Carolina House of Representatives, as ex officio members of the State Budget and Control Board, and Lodge Associates of Myrtle Beach, a South Carolina limited partnership, by and through J. O. Baldwin, Sr., J. O. Baldwin, Jr., Belmont Land and Investment Company, Inc., a North Carolina corporation, and Pharr Yarns, Incorporated, a North Carolina corporation, its general partners, and J. Pete Manos and Mary J. Manos, its limited partners, Appellants.

(354 S. E. (2d) 913)

Supreme Court

*Atty. Gen. T. Travis Medlock, Asst. Atty. Gen. David Eckstrom,* for *Riley, Patterson, Morris, Dennis and Mangum.*

*Samuel W. Howell, IV* and *Theodore B. Guerard* of *McKay & Guerard, P.A.,* Columbia, *for all other appellants.*

*John P. Henry* of *Thompson, Henry and Gwin,* Conway, *for respondent.*

Heard Sept. 15, 1986.

Decided April 13, 1987.

FINNEY, Justice:

This is a declaratory judgment action by the respondent Roger G. Hucks to determine the constitutionality of Section 9 of Act No. 179 of 1981, which amends S. C. Code Ann. § 4-29-10 to 4-29-150 (1976), as amended, (Industrial Development Bond Act) by providing for the issuance of industrial revenue bonds, the proceeds of which will be used to finance the acquisition and construction of "public lodging and restaurant facilities," if the primary purpose is to provide service in connection with tourism, sports, and recrea-

tional facilities. The trial court did not address the constitutional issue, but instead found that the particular project in question did not qualify for financing under the Act as set forth in S. C. Code Ann. § 4-29-10(3) and § 4-29-10(8) (1976), as amended. We reverse.

The question before this Court is whether the project in dispute meets the statutory definition of "project" as set forth in § 4-29-10(3) and § 4-29-10(8) of the Industrial Development Bond Act.

On August 6, 1985, the County Council of Horry County adopted a resolution petitioning the appellant, State Budget and Control Board, to approve the issuance of industrial revenue bonds by Horry County in an amount not to exceed three million seven hundred fifty thousand ($3,750,000) dollars in order to finance the acquisition and construction of public lodging and restaurant facilities to be owned and operated by appellant, Lodge Associates of Myrtle Beach, a South Carolina limited partnership. On August 8, 1985, the State Budget and Control Board, after conducting an independent investigation as required under S. C. Code Ann. § 4-29-140 (1976), approved the issuance of industrial revenue bonds for the proposed project.

The South Carolina Industrial Development Bond Act authorizes the various counties and municipalities of the state to finance eligible projects by the issuance of industrial revenue bonds payable solely from revenues derived from the private developer or industry. Section 4-29-10(3), *supra,* defines project, among other things, as:

> (d) any enterprise engaged in commercial business, including but not limited to ... tourism, sports and recreational facilities; convention and trade show facilities; and *public lodging* and *restaurant facilities* if the primary purpose is to provide service in connection with another qualifying facility under this subitem; ... [Emphasis added.]

Section 4-29-10(8) of the Act defines "tourism, sports and recreational facilities" as follows:

> "Tourism, sports and recreational facilities" shall mean property used for or *useful in connection with* theme parks, amusement parks, historical, educational or

trade museums, cultural centers, or spectator or participatory sports facilities, generally available to the public, including without limitation thereto marinas, *beaches*, bathing facilities, *golf courses*, theatres, arenas and auditoriums. [Emphasis added.]

The County Council of Horry County found that the proposed project would constitute public lodging and restaurant facilities whose primary purpose would be to provide lodging in connection with tourism, sports, and recreational facilities in the City of Myrtle Beach and Horry County. The State Budget and Control Board also independently found that the primary purpose of the project would be to provide public lodging and restaurant service in connection with tourism, sports and recreational facilities in the City of Myrtle Beach and Horry County, and that the proposed project would constitute a "project" under the Act.

The findings of both the County Council of Horry County and the Budget and Control Board are substantially supported by the evidence. The record reveals the proposed project falls within the scope and intent of § 4-29-10(3), *supra*, and § 4-29-10(8), *supra* of the Act. The hotel and restaurant facilities are located in relatively close proximity to the beach, golf courses and convention center in Myrtle Beach, and will service the increased needs and demands of tourists and native South Carolinians visiting Myrtle Beach. The facility will participate, as a member of Golf Holiday, in offering and arranging package deals for golfers who stay at their lodging. It is estimated that seventy-five (75) to one hundred (100) persons will be employed year round. The tax base of Horry County will be increased, and state revenues will rise as a result of increased tax receipts.

Section 4-29-10(8), *supra*, specifically lists beaches, convention facilities, and golf courses as qualified tourism facilities. In our view, the primary purpose of the proposed project is to provide public lodging and restaurant service *in connection* with these statutorily enumerated facilities, which is authorized under § 4-29-10(3) of the Act. A public lodging or restaurant facility does not necessarily have to be an appurtenance to a qualifying facility before it can be financed with industrial revenue bonds. The facility alone may constitute a "project" under the Act, so long as its

primary purpose is to provide service in connection with a qualifying facility. See *State of Florida v. Osceola County Industrial Development Authority*, 424 So. (2d) 739 (Fla. 1982).

The importance of the tourism industry to the economic viability of South Carolina cannot be underestimated. Tourism is the second largest industry in South Carolina. Tourists spent over 2.7 billion dollars in 1984, generating 262.5 million dollars in state, federal and local taxes, including 142 million dollars in state tax collections. The Myrtle Beach area tourism expenditures amounted to more than 1.4 billion dollars in 1984.

The General Assembly has recognized the importance of the tourism industry to the State of South Carolina and the need to provide financial assistance in the form of industrial revenue bond financing to those commercial enterprises locating in the state that further those interests. In Subsection A(3), Section 9, Act No. 179 of 1981, the General Assembly stated, "[i]t is the public purpose of South Carolina actively to promote, attract, encourage and develop economically sound and beneficial commerce and industry, to increase trade ... by encouraging the development of facilities to provide employment and public recreation for the inhabitants of this state and *to attract tourists* from other states. . . ." [Emphasis added.] There is a direct connection between promoting tourism in the state and providing quality and sufficient public lodging and restaurant facilities in order to accommodate the increased number of tourists.

We hold that the proposed project is a qualified "project" under § 4-29-10(3) and § 4-29-10(8) of the Industrial Development Bond Act for financing by sale of industrial revenue bonds. Accordingly, the order of the circuit court is reversed and the case is remanded for consideration of the constitutional issue.

Reversed and remanded.

NESS, C. J., and GREGORY, HARWELL and CHANDLER, JJ., concur.